(Decided 20th February, 1873.)

THE BALTIMORE CITY PASSENGER RAILWAY COMPANY *vs.* THOMAS SEWELL, JR.

*Interest not allowed on Verdict before judgment—Construction of section* 15 *of Article* 29 *of the Code.*

Where, after a verdict for the plaintiff for a sum certain, the defendant moves for a new trial and in arrest of judgment, and these motions are overruled and judgment entered on the verdict, interest will not be allowed on the sum ascertained by the verdict, for the time between the date of the verdict and the entry of the judgment.

A verdict does not legally possess the quality of finality.

Section 15 of Article 29 of the Code of Public General Laws, providing that "all judgments by confession, on verdict, or by default, shall be so entered as to carry interest from the time they were rendered," means that the interest accrues from the time the judgments were rendered.

APPEAL from the Superior Court of Baltimore City.
The facts are stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., STEWART, BOWIE, BRENT and ROBINSON, J.

*Arthur W. Machen* and *I. Nevett Steele*, for the appellant.

The provision of the code is express, that all judgments shall be so entered as to carry interest from the time they were rendered. *Code, Art.* 29, *sec.* 15.

A like provision is made in regard to judgments of Justices of the Peace, which are directed to be so entered as to carry interest thereon from the date thereof. *Art.* 51, *sec.* 27.

The Act of 1861, c. 70, in extending the lien of judgments to leaseholds, enacts that every judgment (thereafter to be rendered) shall constitute a lien to the *amount* and *from the date* thereof. And see *Davidson vs. Meyers*, 24 *Md.*, 538.

It would seem clear, therefore, that, inasmuch as the judge is incompetent to assess damages, he can only enter up judgment for the sum found by the jury, and that such judgment must carry interest from its date. This conclusion, resulting from the plain words of the statute, becomes more certain, when it is considered that at common law a judgment did not bear interest at all. *Perkins vs. Fourniquet*, 14 *How.*, 331; *Boehme vs. Aisquith*, 4 *H. & J.*, 207.

All interest accruing before judgment is damages; and the verdict is the exclusive and final assessment of the damages. The Court has no power to award interest even upon an interlocutory judgment under the Act of 1858, ch. 323. *Mailhouse vs. Inloes*, 18 *Md.*, 328; *Pawling vs. Sartain*, 4 *J. J. Marshall*, 238; *Byinton vs. Lemmons, Hemstead C. C. R.*, 12.

If interest in the opinion of the jury is to run down to the time of the entry of judgment, the jury, it must be presumed, assessed interest down to that time; as, in an inquiry of damages where land is to be taken for a public

use, all the damages are presumed to have been taken into consideration, however improbable it may be in the particular case that certain special damages were considered. *C. & O. Canal Co. vs. Grove,* 11 *G. & J.*, 398.

Where the Court, acting within the scope of its constitutional and legal jurisdiction, discharges the duty of assessing the damages, the ascertainment of damages and the judgment necessarily go together, and thus any omission on the part of the Court fully to calculate the interest, is such an error as that of a jury impannelled for the same duty, and making the same omission would be. Such was the case in the contemplation of the Court in *Anders vs. Devries,* 26 *Md.*, 227. The question in the present case could not have arisen under the circumstances of that case; where, however, the construction we are now contending for was recognized by the Court.

The learned judge of the Court below, according to the opinion filed in the case, seems to have regarded himself as controlled by a supposed course of precedents. These, however, will be seen to lose their force, if attention be directed to the statutory enactments by which the practice has been from time to time affected. Originally, in Maryland, no judgment upon verdict carried interest. The old dockets of Baltimore County Court show this, and it also distinctly appears from the second volume of Harris' Entries, published in 1801. See the form of a judgment for the plaintiff, in *assumpsit,* on page 89, and in *trespass,* on page 149.

A practice obtained at the same time of entering judgments upon *confession* for the amount of the damages claimed in the declaration, with a memorandum of an agreement by the plaintiff that the said damages should be released upon the payment of a specified sum with interest thereon from a named day. This had its beginning perhaps in the form of a warrant of attorney, *cognovit,* judgment bond, or other security, in use at the time, and

under which such confessions were at first ordinarily made. It is observable, however, that even in judgments by confession, or upon agreement, it was not deemed regular to enter judgment for interest directly, but judgment was entered for the penal sum, with the qualification of the agreement that it should be released on receipt of the lesser amount. A judgment rendered by *non sum informatus* before 1800, for the debt due on a single bill, *with accruing interest*, was held to be erroneous. *Preston's Admx. vs. West*, 4 *H. & McH.*, 70.

This form of judgment was first authorized in suits proceeding *in invitum*, by the Act of 1802, ch. 101; this enactment is retained in the Code, Art. 29, sec. 21.

By the Act of 1809, ch. 153, sec. 4, the Courts were authorized in all cases, "to enter such judgment upon the verdict as will carry an interest on the same until the payment of the damages assessed by the jury giving such verdict." An ambiguity arising from the position of the words "on the *same*" is remarked upon in the opinion of the learned judge below. Perhaps, however, it is more apparent than real. In the contemplation of the statute, the verdict is one thing, and the damages assessed another; the verdict is the finding upon the issue, and may be either for plaintiff or defendant; if it be for the plaintiff, the jury also proceed to assess the damages. The judgment, strictly, is rendered on the verdict, that is to say as a consequence of the finding on the issue joined, and not on the assessment of damages; and therefore the draughtsman of the law did not imagine that a verdict, properly so-called, could be supposed capable of carrying any interest, nor doubted that "same" would be understood as necessarily referring to *judgment*. Accordingly, he does not say "until the payment of the verdict," or of "the amount of the verdict," but of "the *damages assessed* by the jury *giving* the verdict." The succeeding 5th section of the same Act puts judgments of justices

of the peace on the same footing, and makes them carry interest from their date. The Act of 1802, being *in pari materia* may also be looked to for light as to the meaning of the expressions used in this Act. And the Act of 1811, ch. 161, sec. 5 makes it still more clear. Taking all the statutes together, there is no reasonable ground for doubting that the interest authorized in all was to run from the date of the *judgment*

The Act of 1856, ch 126, modified the operation of the Act of 1809. The Code has *repealed* the Acts of 1809 and 1811 altogether, and substituted an uniform and explicit rule for all judgments. What parties may still do by consent, or may preclude themselves from objecting to by acquiescence, is not necessary to be considered here. *Anders vs. Devries,* 26 *Md.,* 222. It is enough, that, without consent, only the interest allowed by the statute can be given. Even if the Court were otherwise authorized to allow interest in the nature of damages, it would be totally contrary to principle, and all authority or precedent, to exercise such power in an action of *tort,* or where interest does not necessarily result from the cause of action under a rule of law. *Jennings vs. The Perseverance,* 3 *Dall.,* 338; *Youqua vs. Nixon, Pet. C. C.,* 224; *Butler vs. Stoveld,* 8 *Moore,* 412; *Henning vs. Van Tyne,* 19 *Wend* , 101; *Messin vs. Massareene,* 4 *T. R.,* 493; *Creuze vs. Hunter,* 2 *Ves. Jr.,* 157, 168.

The Court has no power to assess damages. *Rolle Ab.,* 573; *Comyn's Dig., tit. Damages, (E.* 7.) It is a principle that damages are not recoverable for the delay of the Court. *Rolle Ab.,* 573. Judgment cannot be entered for interest accruing after the verdict. *Pawling vs. Sartain,* 4 *J. J. Marsh.,* 268.

Interest is never recoverable upon *costs,* no matter how considerable the amount may be; and this is because no statute has been passed authorizing it. *Hammond vs. Hammond,* 2 *Bland.,* 376.

It has not been attempted in this case to cause a judgment to be entered as of the date of the verdict, *nunc pro tunc;* and it is plain that any such endeavor to evade the force of the rules and principles of law which have been adverted to, must have been unsuccessful. *Anderson vs. Tuck,* 33 *Md.,* 232; *Jarrold vs. Rowe,* 8 *Price,* 582.

*Daniel M. Thomas,* for the appellee.

The propriety of allowing interest to the time of signing the judgment on debts carrying interest, has been expressly maintained in England, and does not seem to have been questioned in this State. *Frith vs. Leroux,* 2 *T. R.,* 58; *Robinson vs. Bland,* 2 *Burr.,* 1,077; *Bodily vs. Bellamy,* 2 *Burr.* 1,094.

In Maryland this practice seems to have prevailed from a very early period, and before any legislation on the subject. *Hook vs. Boteler,* 3 *H. & McH.,* 348; *Contee vs. Findley,* 1 *H. & J.,* 331; *Johnson vs. Goldsborough,* 1 *H. & J.,* 499; *Gwinn vs. Whitaker,* 1 *H. & J.,* 754; *Hammond vs. Hammond,* 2 *Bland,* 368.

The English cases show a manifest disposition on the part even of the Common Law Courts to make all judgments on claims bearing interest include interest to the day on which the judgment was signed, and whenever that day could be ascertained in advance, the jury were directed to include such interest in their verdict; and where this was not done by the jury, the Court (as in the case of *Robinson vs. Bland,*) would itself "carry down" such interest.

The cases cited from our own Courts show a disposition here to allow interest even more liberally than was done in England. This Court when this case was previously before it, declared (35 *Md.,* 257,) that the plaintiff in this action was "entitled to complete satisfaction equivalent to specific relief in Equity," and that in Equity he would have recovered the dividends accrued on the stock with interest thereon, and that the plaintiff was entitled here

in addition to the accrued dividends and interest thereon, to the value of the stock at the time of the demand, with interest to the day of trial "in lieu of dividends accruing subsequent to the demand." Now, in Equity (according to the Maryland practice,) the decree is so framed as to provide for the payment of interest on the claim, whatever it be, from the time it first commences to run until it is paid. The plaintiff is, therefore, entitled to a judgment which will secure him interest on his claim until paid.

The appellee's claim to this interest being thus shown to be founded in justice and equity, and allowable by the practice and common law of this State, it must be recognized by the Courts unless the statute law of the State expressly forbids it.

The Act of 1809, chapter 153, section 4, provides, that the Court shall "enter such judgment on the verdict as will carry an interest on the same, until the payment of the damages assessed by the jury giving such verdict in the same manner as is now used and practiced in the cases of a confession of judgment in said Court." The Code, Article 29, section 15, provides, that "all judgments by confession, on verdict or by default, shall be so entered as to carry interest from the time they were rendered."

That this section of the Code has not been considered or treated as changing the previous practice of allowing interest on the verdict from its date, is shown by the fact, that since the passage of the Code judgments have continued to be entered up as they were before. It thus appears, that prior to the Act of 1809, interest was allowed from the date of the verdict; that since that Act, the same practice has continued down to the passage of the Code, and has still prevailed since the Code down to the present time. *Johnson vs. Atlantic and St. Louis R. R.*, 43 *N. H.*, 410; *Compiled statutes of New Hamp., p.* 496, *sec.* 6; *Irvin vs. Hazleton,* 37 *Penn.*, 465; *Evans vs. Reese,* 12 *Ad. & Ellis,* 175.

The Code is to be interpreted in the light of the Act of 1809. *Rice vs. Hoffman*, 35 *Md.*, 350–1. And the presumption is against its intention to change any previous legislation. The long continuance of the present practice · of itself gives it the force of law. *Shafer vs. Stonebraker*, 4 *G. & J.*, 353.

As far as judgments by *confession* are concerned, the Court has declared that the entry of a judgment so as to carry interest, not merely from the time of the judgment, but from a period anterior thereto, if an error at all was an error *in favor of*, and not *against* the defendant, and one of which he has no right to complain. *Anders vs. Devries*, 26 *Md.*, 222, 227. And if, therefore, the language of this section has been so interpreted as to judgments *by confession*, it must receive a similar interpretation .when applied to judgments on verdict. *Rayner vs. Bryson*, 29 *Md.*, 482.

This being one of those cases in which interest is peculiarly allowable in order to a "*complete satisfaction*," it is difficult to assign a reason for its being withheld for the interval between the verdict and judgment, although it is given down to the date of the verdict, and is also given from the date of the judgment.

The appellant's claim is purely technical, and not founded in justice or equity ; and its allowance would afford to defendants the temptation—in the language of Lord Mansfield, "to make use of all the unjust dilatories of chicane," in order to create as long an interval as possible between the verdict and judgment, and during the interval to get the use of the money due on the verdict, free of interest.

Bowie, J., delivered the opinion of the Court.

At the trial of an action, at the suit of Thomas Sewell, · Jr., (the appellee,) against the Baltimore City Passenger Railway Company, (the appellant,) in the Superior Court

of Baltimore City, a verdict was rendered in favor of the appellee, against the appellant, for $13,261.77, on the seventh day of February, 1870.   Immediately thereupon the appellant simultaneously moved for a new trial, and in arrest of judgment; which motions were under the then existing organization of the judiciary of Baltimore, to be heard and determined by the Supreme Bench.

Both motions were overruled by the Supreme Bench on the third of July, 1871, about sixteen months after they were made.

An appeal was taken from the decisions of the Supreme Bench to this Court, where the same were affirmed at October Term, 1871.   By an order of the Supreme Bench passed on the 29th of April, 1872, the cause was remanded to the Superior Court, where the appellee on the 21st of September, 1872, moved for judgment for the amount of the verdict and interest thereon from *the date of the verdict*. The defendant objected, and insisted that if judgment be rendered it could be only for the amount of the verdict and interest from the *date of the judgment*.

The Superior Court, on the 25th of September, 1872, rendered judgment for the appellee for $13,261.77, the amount of the verdict, with interest from the 7th of February, 1870, (the date of the verdict,) and costs, from which judgment this appeal is taken.   The question presented by the appeal is, whether Courts of Law in this State have power either by virtue of the common law, or the Code, to include in the judgment the interest which accrued on the verdict, (assuming that the verdict bears interest,) between its date and the rendition of the judgment.

The learned judge, who rendered the judgment below, in an opinion assigning the reasons of his action, after reviewing the legislation and practice of this State, adopts the conclusion that all verdicts without distinction as to the form of the action, whether *ex contractu* or *ex delicto*,

having liquidated the claim, and given it certainty as to amount and time of payment, should bear interest "*ex debito justitiæ.*"

Regarding the language of the Code, Art. 29, sec. 15, to be ambiguous, he thinks the terms employed should be so construed as to be most consonant with previous legislation, and the construction adopted by learned Courts, acting under the exposition of a learned bar, and pursued with an unbroken tenor for many years.

The question presented by this appeal, in our opinion, is not one of equitable or legal right between the parties, but of jurisdiction, involving the line of distinction between the province of the Court and the jury.   A verdict implies that there has been an issue of fact between the parties to the cause, which required a jury to find for the plaintiff or defendant.

Issues of law are decided by the Court; issues of fact by the jury.

It would be technically as grave a departure from the functions of a Court for a judge to decide a question of fact, as it would be incongruous for the jury to settle a question of law.

The enquiry then is, to which of these tribunals does the ascertainment or allowance of interest belong?

It must be conceded that interest is not an inseparable and invariable incident of claims for money, or unliquidated accounts.   "It is recoverable as of right, upon contracts in writing to pay money upon a day certain ; as upon bills of exchange and promissory notes, or on contracts for the payment of interest, or where the money claimed has been actually used, and upon bonds, etc., but in other cases, *it is a question entirely for the jury to be decided according to the equities of the transaction.*"   *Newson vs. Douglass*, 7 *H. & J.*, 417 ; *Karthaus vs. Owings*, 2 *G. & J.*, 430.

But it is said whenever the claim is liquidated by verdict, however the claim may have arisen, whether *ex con-*

*tractu* or *ex delicto*, the amount of the verdict should bear interest. This argument attributes to a verdict the quality of finality, which it does not legally possess. The verdict does not finally establish the claim. It is liable to be set aside for error in law or in fact, and is wholly inoperative, until sanctioned by final judgment.

The leading case cited by the appellee in support of the power of the Court to add interest from the date of the verdict, was an action upon the case upon a bill of exchange, with counts for money lent, and money had and received. The verdict was found for the plaintiffs, *subject to a case stated* for the opinion of the Court, in the language of Lord Mansfield, "leaving it quite open to the Court to determine whether anything, and what, is recoverable."

There was no question as to the respective powers of the judge and the jury, but it was in the nature of a special verdict.

After disposing of the question on the first count adversely to the plaintiff, his lordship subsequently delivered the opinion of the Court as follows in effect: "The bill of exchange given for the £300 lent by the plaintiff to Sir John Bland, was void in point of law as a security; but the giving of the bill of exchange *upon such consideration*, is stated in the case *as a fact admitted*, and showed that, upon the loan, the intention and agreement of the parties was, "*that the money should carry interest* if not repaid within the time limited."

"The contract remains *good*, though he gave a void security to perform it. So that it is a liquidated sum which carries interest from the time at which it was agreed to be paid."

"But the question is, whether it is to stop at the commencement of the action; or to be carried on to the time of liquidating the debt by the verdict or by the judgment."

After congratulating himself upon the opportunity of discussing and settling the point, because the *general practice* of his associates in taking damages in these cases, as he was informed, was to stop at the commencement of the action, and to allow interest no further down ; which, he conceived, was not founded in law, but in mistake and misapprehension ; he argues upon principles of natural justice, that the interest should be carried down quite to the actual payment of the money·; but as that cannot be done until the demand is completely liquidated, he asks :

"Why may not *juries* compute interest to the time of the verdict, or even till the end of four days within the next term ; (before which time the plaintiff cannot sign his judgment ?)

"I think I can see how this mistake has happened. I dare say that associates have not distinguished between this species of action, (it being called an action of trespass on the case,) and common actions of trespass ; such as actions for assaults, batteries and false imprisonment."

Having reiterated his opinion, that carrying down the interest does a plaintiff complete justice, he concludes thus emphatically :

"*Here*, the jury having *left the matter quite open to us*, we can bring the interest down to the time of the liquidation and ascertainment of the sum really due from the defendant to the plaintiff, which is the time of giving the judgment." 2 *Burr.*, 1085 *to* 1088.

It is too clear for argument, from the preceding citations, that there was no question before the Court as to its power to add interest to a verdict already rendered, but the question was as *to what should be done in the case of a verdict subject to a case stated, in which all was left open to the Court.*

It is said, in Rolle's Abridgment, that the Court has no power to assess damages, and that damages are not recoverable for the delays of the Court. *Rolle's Abrid.*, 573.

Comyn qualifies the position laid down by Rolle, confining the power of the Court to assess damages by way of interest, to those cases where the claim is certain and ascertained.

It is established by the authorities cited by the appellants that judgments in this State did not carry interest at common law, but were made to do so by comparatively recent Acts of Assembly. Chief Justice TANEY, in the case of *Perkins vs. Fourniquet*, 14 *How'd*, 331, says: "Upon common law principles a judgment does not carry interest." *Vide also Preston's Adm'rs vs. West*, 4 *H. & McHy.*, 70 ; *Harris' Entrs.*, 89, 149 ; *Acts of* 1802, *ch.* 101, 1809, *ch.* 153.

In the case of *Mailhouse vs. Inloes*, 18 *Md.*, 328, which was an action on an account for goods sold and delivered, verified by affidavit, under the Act of 1858, ch. 323, relating to suits in Baltimore city, the defendant having failed to appear, a judgment by default was entered; and on a subsequent day the judge ordered judgment to be entered for the amount of the account, with interest from the 20th of April, 1858, and costs. It was urged by the appellant that the Act being in derogation of the common law must be construed strictly, it must appear affirmatively on the face of the Act that the Court had power to enter the judgment.

This Court said : "The judgment must be restricted to the amount of the account thus authenticated, and the Court had no power, *of its own mere motion*, to allow interest on the account. The interest was a subject of inquiry by a jury, as provided by the 6th section of the Act.

If the final act of the Court the judgment did not carry interest at common law, why should the intermediate, interlocutory act of the verdict have that effect ?

It is conceded by Lord Mansfield, in the case in Burrow, that interest was only carried down in cases of tort,

to the time of the action, and it was only in cases of contract that he insisted the principles of natural justice demanded it should be carried down to the latest possible moment. It was reserved for the commercial spirit of modern times to convert the judgments of Courts into interest bearing liens.

The verdict, being an intermediate step in the progress of litigation, liable to be suspended or annulled by the subsequent action of the Court, it does not seem to us consistent with judicial deliberation that the delay occasioned by motions for a new trial, or in arrest of judgment, (although such motions should be ultimately overruled,) should be made the occasion of an increase of damages, by way of interest, on the presumption that such motions were groundless, and without cause. The motion for a new trial, or in arrest, is a valuable and necessary incident to the right of trial by jury, and no restraint should be placed upon it inconsistent with its freest exercise. The Court cannot assume that in the exercise of a legal right, any party to a cause is actuated by sinister motives.

We are not at liberty, however, to deal with this question upon principles of common law or natural justice.

It is regulated by statute, or the Code which we are required to interpret according to its true intent and meaning.

The Acts of 1802, ch. 101, 1809, ch. 153, and 1811, ch. 161, have been condensed substantially in Art. 29, sec. 15, of the Code of Public General Laws, in language which it seems to us is susceptible of but one construction, viz: "All judgments by confession, on verdict, or by default, shall be so entered as to carry interest from the time they were rendered." The pronoun "they" in the section above quoted, has for its antecedent the word "judgments," hence the interest accrues from the time the *judgments* were rendered, and not the verdicts.

Without collating the several Acts of Assembly passed prior to the Code, on the subject of entering judgments, with the text of Article 29, sec. 15, we think it is quite clear from the principles of the common law, and the previous decisions, that the Court has no power to calculate interest on the amount ascertained by the verdict, but that the true construction of the Code requires that judgments shall be entered so as to bear interest only from the time the judgment was rendered.

If it is deemed proper that the law should be changed, so as to make verdicts bear interest, rather than judgments, it is a subject for legislative, not judicial action.

For these reasons, the judgment in this case will be reversed, as to the interest accruing between the date of the verdict and the entry of the judgment, and the case remanded, that the judgment may be modified accordingly.

*Judgment reversed in part,*
*and cause remanded.*

(Decided 20th February, 1873.)